[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4910
ISSUE
The plaintiff brought this action to foreclose a mortgage on residential real estate occupied by the defendants, who are owners of the equity of redemption. The defendants claim the plaintiff is not entitled to foreclosure because it wrongfully rejected their reinstatement offer, and in their counterclaim they allege that the plaintiff violated CUTPA by such rejection. The defendants seek the right to pay the mortgage installments, to be relieved of any default, and claim money damages in their counterclaim.
FACTS AS FOUND BY THE COURT.
The plaintiff is holder of the mortgage by assignment. The defendants did not make the monthly mortgage installment payments due on April 1, 1993 and May 1, 1993. They received a letter dated May 25, 1993 from the plaintiff (Plaintiff's Ex. 07), entitled Notice of Default and Intent to Foreclose, which stated as follows:
 Under the provisions of the Deed of Trust dated June 26, 1987 in the amount of $153,000, your mortgage is in default due to non-payment of the installment due on April 01, 1993 and subsequent monthly installments and late charges.
 The total amount required to reinstate the mortgage is $5,137.23, including late charges. Notice is hereby given that unless we receive the total amount due by 6/25/93, we may accelerate the total debt secured by the Deed of Trust. We will be entitled to collect all reasonable costs and expenses connected with pursuing its remedies under the Deed of Trust Note. Failure to pay the amount will result in foreclosure and sale of the property.
After acceleration, but prior to the CT Page 4911 foreclosure sale of the property, you have the right to reinstate the mortgage by paying all sums which would be then due under the deed of trust, the note and notes securing future advances, if any, had no acceleration occurred plus all reasonable expenses incurred by lender and trustee in enforcing the covenants and agreements contained in the deed of trust, . . . . If payment is made more than thirty (30) days after the date of this notice, you must call for the exact amount due because additional fees may have been incurred.
The amount stated in the Notice was $72.18 too high because the bank erroneously included a late charge for March 1993. The plaintiff did not receive the total amount due or any other amount by June 25, 1993, nor was the bank contacted by the defendants. The defendant, William Beall, was not told by the bank on or about July 14, 1993, by phone or otherwise, that he could reinstate by paying $6,777.46, provided that amount was received by the bank the next day.
The bank, by letter of July 7, 1993, Pl.'s Ex. 12, referred the Beall loan for foreclosure to its attorneys.
On his own, Mr. Beall sent the bank a check dated July 14, 1993, in the amount of $6,777.46, which is the reinstatement amount indicated in the May 25, 1993 letter (as of June 25, 1993) plus the July payment. By doing this, he was attempting reinstatement although the June 25, 1993 deadline, after which acceleration and foreclosure might occur, had passed.
This check was returned to the Bealls by a letter from the bank's attorneys dated July 27, 1993, (Def's. Ex. 05) "as insufficient to reinstate or payoff this loan."
The plaintiff's complaint in this action was dated July 22, 1993. The July 27 letter from the bank's attorneys to the Bealls (Def.'s Ex. 05), stated that the loan had been referred to the law firm for foreclosure. The attorneys advised the Bealls that the amount due to CT Page 4912 the Bank to reinstate the loan as of the date of the letter was $8,588.17, representing reinstatement through August 1, 1993, and that the $8,588.17 did not include attorney's fees or costs associated with the attorneys' office handling of the matter. The letter also stated that all figures were subject to verification and might change. The letter also stated that prior to tendering any funds it was necessary that the Bealls contact the attorney for an exact figure. The $8,588.17 was computed as follows:
 1. Monthly payments of $1,640.23 due April 1, May 1, June 1, July 1, and August 1, 1993 — 5 months $8,201.15
 2. Late charges of $72.18 per month for payments due April 1, May 1, June 1, July 1, 1993 — 4 months 288.72
 3. Property Inspection (done monthly when property is referred for foreclosure) 98.30 ---------- $8,588.17
(Pl.'s Ex. 11, Testimony of Ms. Maus). The $72.18 late charge for the March 1993 payment that had been mistakenly included in the May 25, 1993 Notice of Default was not included in the $8,588.17 computation.
Thus in order for the Bealls to reinstate they would have to pay $8,588.17 plus attorney's fees and costs and any other charges as indicated in the July 27, 1993 attorney's letter, which letter also specified that attorney's fees and costs were not included in the $8,588.17, and that the Bealls would have to contact the attorney for an exact figure before tendering any funds.
The Bealls did nothing thereafter except to send the attorney a letter dated August 25, 1993, in which Mr. Beall stated he would pay $8,345.59, which is $8,417.69 ($5,137.23 as demanded in bank's Notice of Default dated May 25, 1993 Pl.'s Ex. 7; plus monthly payments of $1,640.23 due July 1 and August 1, 1993) minus $72.10 for the late charge erroneously included in the May 25, 1993 CT Page 4913 Notice. Mr. Beall subtracted $72.10 instead of $72.18, which was the actual late charge. He also stated in his August 25, 1993 letter as follows:
 I will not pay any fees to lawyers, law enforcement officials, etc. as I did what they told me to do when they told me to do it. I will not pay late charges on any August payment as they sent the check back to me and it was in their own time.
The court specifically finds that the defendants failed to prove that the bank told Mr. Beall in mid-July to send in a check for $6,777.46, which would reinstate the mortgage. Mr. Beall did this on his own when he sent the bank a check in the amount of $6,777.46, dated July 14, 1993, after this loan was referred to the bank's attorney for foreclosure. The court concludes that Mr. Beall arrived at this amount by adding the monthly payment of $1,640.23 due July 1, 1993, to the amount of $5,137.23 stated in the bank's May 25, 1993 Notice of Default and Intent To Foreclose, which figure was the amount the bank required by June 25, 1993 for reinstatement.
That check of July 14, 1993 which was refused by the bank was the last money sent by the Bealls.
The court finds that the defendants defaulted on their mortgage and that the defendants failed to prove either of their Special Defenses, and further have failed to prove a CUTPA violation by the plaintiff as alleged in their counterclaim. The plaintiff is therefore entitled to a foreclosure of the mortgage. The case is ordered to be placed on the foreclosure Short Calendar for appropriate proceedings consistent with this decision.
RICHARD A. WALSH, J.